**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARK ADAMS, et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Case No. 17 C 8544** |
| **BRG SPORTS, INC., et al.,** | ) | |
| **Defendants.** | ) | |
| **FREDDIE ADAMS, et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Case No. 17 C 8972** |
| **BRG SPORTS, INC., et al.,** | ) | |
| **Defendants.** | ) | |
| **QUINCY BAKER, et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Case No. 18 C 129** |
| **BRG SPORTS, INC., et al.,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in these cases, all of whom played high school football, have sued BRG Sports, Inc. and Riddell, Inc., which design, manufacture, and sell football helmets, alleging that defective designs, inadequate warnings, and negligence caused them

injuries. The cases were originally filed in the Northern District of California in February 2017 and were later transferred here. The complaints have gone through several iterations. They were initially filed on behalf of a group (actually three groups, as there are three suits for reasons of which the Court is unaware). While the cases were still in the Northern District of California, plaintiffs said they would file them as individual cases following transfer. After the cases were transferred here, this Court adopted a different approach in order to attempt to avoid unnecessary effort and expense. Specifically, the Court took the approach sometimes used in mass-tort multidistrict litigation—of which these cases are in effect a mini version—and suggested that plaintiffs file a "master complaint" containing common allegations plus individual "short-form complaints" adopting the master complaint or at least its applicable parts and including allegations specific to each individual plaintiff. Plaintiffs adopted that approach, and defendants have moved to dismiss.

As indicated, the Court told plaintiffs to include common allegations in the master complaint and individual allegations in the short-form complaints. In retrospect, the Court should have been somewhat more specific about what topics should be in each. The way plaintiffs did it, the individual short-form complaints include the following: identification of the parts of the master complaint the plaintiff is adopting; the state of residence of the plaintiff; identification of when and where the plaintiff played football; allegations about the nature of the injuries the plaintiff suffered playing football and symptoms the plaintiff has experienced from those injuries; a statement that the plaintiff wore a helmet designed or manufactured by defendants; and a listing of the causes of action set forth in the master complaint that the plaintiff is adopting. Somewhat

conspicuously missing are allegations relating to causation, a point to which the Court will return later in this opinion.

Defendants' motion to dismiss invokes Federal Rules of Civil Procedure 8(a) and 12(b)(6). A plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must include enough facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. But "[u]nder Rule 8, a plaintiff only needs to give enough details about the subject-matter of the case to present a story that holds together." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (internal quotation marks omitted). Finally, in considering a motion to dismiss for failure to state a claim, the Court construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and draws reasonable inferences in favor of the plaintiff. *See, e.g., Ancich v. Home Depot U.S.A.*, Inc., 852 F.3d 643, 648 (7th Cir. 2017).

**A. Defendants' arguments that lack merit**

A number of the defendants' arguments lack merit. The Court lists them (there are others, but this is a reasonably comprehensive list):

1. Defendants say that plaintiffs don't describe whether they have undergone medical treatment or that they have received a specific diagnosis. *See* Defs.' Mem. at 11-14 (and elsewhere). As a result, defendants contend, they cannot tell whether plaintiffs are suing for past, present, or future injuries. The Court disagrees; the

individual complaints adequately describe the injuries and symptoms that each plaintiff claims. (The fact that these are stated in the same or similar ways by different plaintiffs is not in the least bit problematic; one would expect that different people who experienced strikes to the head from which they were not adequately protected would suffer the same or similar types of injuries.) Defendants cite no case requiring a medical diagnosis or specific treatment to be alleged in a complaint in order for a case to proceed. That is an issue of the sufficiency or weight of the evidence, not the adequacy of the plaintiff's complaint. The same is true of defendants' criticism that plaintiffs have described only "subjective complaints." *Id.* at 12.

2. Defendants object that although the master complaint alleges negligent marketing, none of the plaintiffs identify any particular marketing to which they were exposed. *Id.* at 15-16. The negligence claim, however, is not confined to marketing; plaintiffs allege that "[d]efendants were negligent in the design, testing, marketing, *and* engineering of the helmets [worn] by plaintiffs." Case No. 17 C 8972, dkt. no. 90 ¶ 172 (emphasis added). This along with the other detailed allegations of what plaintiffs contend was negligent about each of these activities—design, testing, marketing, and engineering—is more than sufficient to meet plaintiffs' obligations under Rule 8(a). The specific marketing to which particular plaintiffs were exposed is a matter of evidence appropriately explored during discovery; the complaint need not include this level of detail in a case like this one.

3. Defendants argue that the complaints are deficient because, for the most part, they do not identify the particular helmet model that the particular plaintiff used. *Id.* at 17. This is not fatal or even close to it. As an initial matter, one would not expect a

high school football player to recall the particular model of helmet that he used. That aside, the particular model is not the type of detail that is required for a complaint to satisfy Rule 8(a). It is sufficient to allege that the plaintiff used a helmet manufactured by the defendant; the rest is appropriately addressed during discovery.

Defendants point out that two of the plaintiffs, Lesley Williams and Ryan Carver, do identify a particular supposed helmet model, the "Riddell Air," which defendants say does not exist. (Evidently another manufacturer, Schutt, makes an "Air" model, but Riddell doesn't.) *Id.* at 17-18. It may be that these plaintiffs' allegations about the model name are wrong and that they actually used a Riddell helmet at some relevant point, or it may be that the allegations about the model name are right and that these plaintiffs thus have no viable claim against Riddell. But the Court cannot appropriately adjudicate this factual question on a motion to dismiss for failure to state a claim. That said, plaintiffs are advised that these complaints, like all complaints, must comply with Federal Rule of Civil Procedure 11, and if plaintiffs' counsel have filed claims for particular plaintiffs without an appropriate basis to allege that they actually used a Riddell helmet, counsel face the possibility of sanctions, not to mention eventual dismissal of these plaintiffs' claims.

4. Defendants say that some of the short-form complaints appear to incorporate allegations from the master complaint that don't appropriately apply to the particular plaintiff. *Id.* at 19-23. One example involves plaintiff Bryce Gardner, who played football only after 2012 but incorporates allegations involving a marketing campaign that ran from 2006-11, which defendants say "has no relevance" to Gardner's claims. *Id.* at 20. With regard to this example, the Court cannot definitively conclude at

this stage of the case that the way defendants marketed helmets at an earlier point in time has no bearing at all on the claims of a plaintiff who used a helmet at a later time. But that aside, the proposition that a particular complaint includes surplusage is not a basis to dismiss the complaint; at most, it serves as a basis to strike the surplusage. In sum, the Court does not agree with defendants' contention that the claimed over-incorporation "cloud[s] and obfuscat[es] the true nature" of the plaintiffs' claims. *Id.*

**B. Defendants' arguments with potential merit**

Some of the points the defendants make have merit, but they involve matters that can at least potentially be cured by repleading.

1. The primary meritorious point that defendants make concerns causation. In the current format, plaintiffs have included causation allegations only in the master complaints and have left them out of the individual short-form complaints. Defendants correctly protest that these allegations are worded in a way that obfuscates whether each and every plaintiff is alleging that his injury is caused by the defendants' negligence, defective design, and/or inadequate warnings.

There are, as defendants correctly point out, two aspects to causation. The first is general causation, that is, whether the product or exposure has the capacity to cause the injury the plaintiff alleges. The second is specific causation, that is, whether the product or exposure in fact caused the plaintiff's injury. Both must be alleged. *See, e.g., Wells v. Smithkline Beecham Corp.*, 601 F.3d 375, 376-77 (5th Cir. 2010) (Texas law).

General causation, in the Court's view, can appropriately be included in the master complaint in the present case. That is what plaintiffs have done, and their

allegations on this point in the master complaint are sufficient.

Specific causation is a different matter. That must be determined and, in the Court's view, alleged on a plaintiff-by-plaintiff basis. But plaintiffs have not done that. Rather, they have tried to allege specific causation on a group basis and only in the master complaint. And these allegations are worded in a way that leads one to believe that plaintiffs may be trying to bury individual causation problems by taking a "safety in numbers" approach. For example, on the failure to warn claim, plaintiffs say this about causation:

> [H]ad Riddell actually provided full, understandable, and effective warnings to Plaintiffs regarding the risks of long-term brain injuries while wearing supposedly protective head gear (Riddell helmets), *certain Plaintiffs* would have avoided certain head contact they thought was safe, *certain Plaintiffs* would not have chosen to continue playing football, and *certain Plaintiffs* may have chosen to wear a safer and better designed helmet.

Case No. 17 C 8972, dkt. no. 90 ¶ 24 (emphasis added). Nothing in either the master complaint or the individual complaints identifies which plaintiffs fit into which of these categories; indeed, the individual complaints are silent on this point.

There are also problems with plaintiffs' other specific causation allegations. As defendants point out, *see* Defs.' Mem. at 24, plaintiffs do not allege that they would not have suffered their injuries had the helmets been designed differently or used different materials. This is critical to the issue of causation on their design defect claim, count 2 in the master complaint.[1] Their formulaic allegation in that count that the defective

[1] Defendants argue that they provided warnings adequate to advise plaintiffs of the possibility of injury, and they cite other allegations by plaintiffs to the effect that no helmet can prevent all injuries and that playing football can lead to concussions. The first of these contentions cannot properly be adjudicated on a motion to dismiss for failure to state a claim. The second may ultimately undermine plaintiffs' cases, but at

design was "a proximate and producing cause of the long-term brain injuries suffered by Plaintiffs and other damages" is not enough by itself. Case No. 17 C 8972, dkt. no. 90 ¶ 182. Likewise, the short-form complaints say nothing about whether or how defendants' negligence (count 1) caused plaintiffs' injuries.

2. The bottom line is that the individual short-form complaints are deficient in their current form because they do not include any causation allegations, let alone adequate causation allegations. This is a potentially curable defect, so the Court overrules defendants' argument that the Court should dismiss all of the plaintiffs" claims with prejudice. But the short-form complaints will have to be amended to include allegations regarding causation that are sufficient to pass muster under Rules 8(a) and 12(b)(6).

3. Other criticisms that defendants make regarding the causation allegations lack merit. Defendants describe, by way of example, a number of the specific incidents alleged by plaintiffs in which they suffered concussions or other head injuries while playing football, and they say that plaintiffs don't describe what they could have done differently to avoid this. *See* Defs.' Mem. at 27. This misses the point; plaintiffs' contention is that a better designed helmet would have prevented or lessened the severity of their injuries from these incidents and that adequate warnings would have led them to avoid playing football altogether, use a better helmet, or play the game differently. Defendants' contention that the circumstances of certain injuries undermines

---

this point the Court is required to read the complaint in the light most favorable to plaintiffs, and the existence of arguably contradictory allegations in the complaint does not defeat their claims as a matter of law. (The Court does not adjudicate at this point whether a warning about the possibility of concussions is sufficient to adequately warn helmet users regarding the injuries and consequences the plaintiffs say they suffered.)

these particular plaintiffs' claims lacks merit.

Defendants also argue that science has not demonstrated a cause-and-effect relationship between concussions, other football-related head trauma, and permanent brain injury. *See id.* at 29-30. But a plaintiff is not required to prove his case in his complaint, and a Rule 12(b)(6) motion is quite obviously not a proper vehicle to assess the scientific literature or the evidentiary support for plaintiffs' theory of causation.

4. Defendants also argue that plaintiffs' complaints overlook state-specific legal requirements. The Court agrees with defendants, at least for purposes of the motion to dismiss, that the law of the state where a plaintiff's alleged injury occurred governs because that is the most significant contact in a case of this type and no other state has a greater relationship with the claims. *See Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 164, 879 N.E.2d 893, 903 (2007).

Two of the plaintiffs played football in Louisiana. It appears that a statute in that state establishes the exclusive theories of liability in a products liability case, including defective construction or composition, defective design, inadequate warning, or failure to conform to the manufacturer's express warranty. *See* La. Rev. Stat. § 9:2800.52-58. Defendants appear to contend that because the two plaintiffs who played football in Louisiana do not cite the Louisiana statute in their short-form complaints, their claims are defective. *See* Defs.' Mem. at 39-40. If that is what defendant are contending, they are taking an unduly formulaic approach to pleading in the Court's view. At the appropriate time, these plaintiffs' claims will be evaluated under the appropriate state's law; their failure to cite the Louisiana statute in their complaints is not fatal. (The Court also notes that plaintiffs' claims include allegations of defective design, inadequate

warning, and, potentially, defective composition, all of which appear to be permitted under the Louisiana statute.) That said, any plaintiff whose claims arise under Louisiana law would be well-advised to take the statute into account in filing an amended short-form complaint.

Many of the plaintiffs played football in Texas and Iowa which, according to defendants, impose a "feasible alternative design" requirement for a claim based on design defect. *See id.* at 41-44. Plaintiffs address this question in the master complaint, but defendants point out that some of plaintiffs' allegations about this are relatively vague, *see id.* at 43 (first paragraph), and some of their more specific allegations may not apply to each and every individual given when plaintiffs allege that certain new materials were available. *See id.* at 43-44. Without addressing at this time whether these claimed defects are material, plaintiffs would be well-advised to get more specific about this in their amended short-form complaints or any further amendments to the master complaint.

**C. What happens next**

The Court is, via this order, dismissing the short-form complaints for the reasons described above, with leave to amend. At this point, at the Court explained to the parties in open court earlier today, the pace is going to pick up considerably. The Court appreciates that plaintiffs will have a chore ahead of them in communicating with ninety-some plaintiffs to prepare amended short-form complaints. But the Court is entitled to assume in setting the schedule for this that counsel—who filed the first of these cases over eighteen months ago—have already considered and addressed with their clients the critical issue of causation. Thus it should not *reasonably* take plaintiffs and counsel

all that long to determine whether they can amend to include the appropriate and necessary allegations consistent with their obligations under Rule 11. The same is true on the defense side; the Court has now ruled on the overwhelming majority of the arguments offered for dismissal, and at this point we are down to a few well-defined brass tacks.

**Conclusion**

The plaintiffs' short-form complaints are dismissed for the reasons described above. Plaintiffs are given four weeks, until November 2, 2018, to file amended short-form complaints and, if they wish, an amended master complaint. Defendants are given a little over three weeks after that (given the Thanksgiving holiday), until November 28, 2018, to file a single motion to dismiss. Their supporting memorandum may not exceed thirty pages, exclusive of the table of contents.[2] Plaintiffs are given two weeks, until December 12, 2018, to file a response, which likewise may not exceed thirty pages. Defendants are given one week, until December 19, 2018, to file a reply, which may not exceed fifteen pages.

Date: October 5, 2018

MATTHEW F. KENNELLY
United States District Judge

[2] The Court encourages defendants to deal with issues common to different plaintiffs together, rather than with each plaintiff separately.