IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FREDDIE ADAMS, et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>BRG SPORTS, INC., et al., )<br>)<br>Defendants. ) | Case No. 17 C 8972 |
| JAMES BRADSHAW, et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>BRG SPORTS, INC., et al., )<br>)<br>Defendants. ) | Case No. 18 C 129 |
| CORY BRANDON, et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>BRG SPORTS, INC., et al., )<br>)<br>Defendants. ) | Case No. 17 C 8544 |
| JEFFREY JONES, et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>BRG SPORTS, INC., )<br>)<br>Defendants. ) | Case No. 18 C 7250 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in these cases, all of whom played high school football, allege that the defendants produced helmets with inadequate warnings, which caused the plaintiffs' brain and neurocognitive injuries. Because the cases include dozens, the parties and the Court selected certain plaintiffs' cases as "bellwether" cases, which have now proceeded all the way through discovery. The defendants have filed motions to exclude the plaintiffs' two expert witnesses and motions seeking summary judgment against each of the bellwether plaintiffs. For the reasons set forth below, the Court grants the motions to exclude and grants summary judgment in favor of the defendants.

### Background

The plaintiffs are all former high school football players in Texas or Iowa. There are seven bellwether plaintiffs: Simson Green, Jaquaries Johnson, Gregory Page, Michael Sterns, Ashton Whitby, Walker Whitehorn, and Jeffrey Wodka. Either Texas or Iowa substantive law applies to each of these plaintiff's claims. The defendants are two related business entities: BRG Sports, Inc., formerly known as Riddell Sports Group, Inc., and Riddell, Inc., a wholly owned subsidiary of BRG. Both companies are involved in the manufacturing, distribution, and sale of Riddell football helmets. For simplicity's sake, the Court will refer to the defendants collectively as Riddell.

Each plaintiff wore a Riddell helmet during the time period relevant to these lawsuits, some as early as 1975 and others as late as 2002 or later. Beginning in 1983 and until the late 1990s, Riddell affixed warning labels to the back of its football helmets. The warning stated: "Do not use this helmet to strike an opponent. Such an action is against football rules and may cause severe brain or neck injury. Playing the game of

football in itself can cause injury, and no helmet can prevent all such injuries." Am. Master Compl. ¶ 12 (dkt. no. 184). The plaintiffs assert that this label was "inherently misleading" by conveying that the helmet would protect against injuries so long as participants adhered to the rules of football. *Id.* ¶ 13. They also allege that Riddell had "superior knowledge" about the relative risks of wearing helmets as early as the 1970s but did not disclose those risks. *Id.* ¶ 19. The plaintiffs further contend that Riddell's later warnings—including those involving the "Revolution Helmet" product line from 2003, which Riddell claimed to be 31 percent safer than other available helmets—"were similarly misleading and failed to effectively disclose the long-term dangers these players would be exposed to while wearing the Riddell helmets." *Id.* ¶ 14–16.

Each of the plaintiffs claims to suffer from brain and neurocognitive injuries—namely mild traumatic brain injuries (MTBIs). MTBIs include concussions, which may cause post-concussion syndrome, chronic traumatic encephalopathy (CTE), and "second impact syndrome."[1] Some bellwether plaintiffs contend that the scope and existence of their injuries were only recently discovered, as they say they experienced the neurocognitive effects of their injuries only as recently as 2017.

Following transfer of these cases from the Northern District of California, the Court has treated them similarly to a mass-tort multidistrict litigation proceeding. In a first amended "master complaint" containing allegations common to all plaintiffs and in individual "short-form complaints" with allegations specific to each individual plaintiff, the plaintiffs allege that the defendants' negligence (design defect and failure to warn)

---

[1] Second impact syndrome occurs when an athlete sustains a second brain injury prior to recovering from an initial concussion; it can cause serious head trauma or death. *Id.* ¶ 38–39.

3

caused their brain and neurocognitive injuries. To support these claims, the plaintiffs designated Dr. Michael Motley as their warnings expert and Dr. Randall Benson as their causation expert. Riddell does not dispute that the bellwether plaintiffs each wore a Riddell helmet at some point during their football careers. It contends, however, that the helmets did not cause the plaintiffs' injuries and that its warnings were adequate.

In April 2021, the Court granted summary judgment in favor of Riddell on the plaintiffs' design defect claims but left intact the plaintiffs' failure to warn claims. *Adams v. BRG Sports, Inc.*, Nos. 17 C 8544, 17 C 8972 & 18 C 129, 2021 WL 1517881 (N.D. Ill. Apr. 17, 2021). The defendants now move to exclude plaintiffs' experts Dr. Motley and Dr. Benson based on Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The defendants have also moved for summary judgment on the plaintiffs' failure to warn claims. Among other contentions, Riddell argues that should even one expert be excluded, the plaintiffs cannot prove all of the elements of their failure to warn claims.

## Discussion

Expert testimony is admissible if the witness is qualified, applies reliable methodology, and offers testimony that will assist the trier of fact. *See Daubert*, 509 U.S. at 597. The purpose of *Daubert*'s gatekeeping requirement "is to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). "It is to make certain that an expert, with testimony based upon professional studies and personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* The party seeking to introduce expert witness testimony bears the burden of demonstrating, by a preponderance of the evidence, that it satisfies the *Daubert*

standard.  *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 673 (7th Cir. 2017).

**A.     Dr. Motley**

Riddell contends that the Court should exclude Dr. Motley entirely because he lacks the appropriate qualifications regarding consumer product warnings and because his methodology is unreliable.

"Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony."  *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir.1990).  "[A] court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area."  *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

Dr. Motley has a Ph.D. in communication with an emphasis in psycholinguistics, and he has authored more than sixty peer reviewed articles, books, and chapters on communication.  Furthermore, one of his most recent articles specifically focused on the adequacy of warnings.  Given his decades of experience and the subject matter of his writings, the Court disagrees with Riddell and finds that Dr. Motley is qualified.

The Court agrees with Riddell, however, that Dr. Motley's testimony about the adequacy of Riddell's warnings is insufficiently reliable to be admissible.  *See generally Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999) (explaining that a "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions. . . are reliable and relevant").

*Daubert* outlined a non-exhaustive list of factors to consider in evaluating an expert witness's reliability: "(1) whether the expert's conclusions are falsifiable; (2)

5

whether the expert's method has been subject to peer review; (3) whether there is a known error rate associated with the technique; and (4) whether the method is generally accepted in the relevant scientific community." *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014). This "inquiry focuses not on 'the ultimate correctness of the expert's conclusions,' but rather on 'the soundness and care with which the expert arrived at her opinion.'" *Timm v. Goodyear Dunlop Tires N. Am., Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019) (quoting *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)). An expert's "[s]ubjective belief or unsupported speculation" alone will not satisfy the reliability prong. *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996) (quoting *Deimer v. Cincinnati Sub-Zero Prod., Inc.*, 58 F.3d 341, 344 (7th Cir. 1995).

Dr. Motley's own deposition testimony establishes that his opinion on the inadequacy of Riddell's warnings does not meet *Daubert*'s threshold. Dr. Motley conceded during his deposition that an opinion about a warning's efficacy is merely a hypothesis absent empirical testing. He testified that such empirical testing can be conducted in a scientific manner, by comparing the efficacy of a given warning against a proposed alternative. Yet, notably, he admitted that he *had not conducted* any such empirical testing on Riddell's helmets: he had not tested the warning's physical placement, its signal words, its consequence information, or its consistency, nor had he tested whether the warning contained superfluous information. Dep. of Dr. Michael Motley at 138–40 (dkt. no. 426-3). Instead, Dr. Motley's premised his opinion on "principles" he believed "should generalize" to Riddell's helmet warning. *Id.* at 141. In short, Dr. Motley effectively conceded that his opinion about the adequacy of Riddell's warning label was an untested hypothesis.

6

Additional considerations beyond the lack of testing buttress the proposition that Dr. Motley's testimony does not satisfy *Daubert*'s requirements. Dr. Motley conceded that he had made no effort to determine whether there are any industry standards for football helmet warning labels, despite acknowledging that one would want to know that information to properly evaluate a warning. He also said he had never seen a Riddell helmet in real life, so he was unfamiliar with the relative size and location of the specific warning label at issue. Although an expert may rely on information provided by a party's attorney, Dr. Motley has not considered contextual data in forming his opinion. *See Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013); *see also Wilbourn v. BRG Sports, Inc.*, No. 4:19 CV-00263-P, 2021 WL 5577683, at *7–8 (N.D. Tex. Oct. 7, 2021) (excluding Dr. Motley's testimony regarding the adequacy of football helmet warnings on similar grounds).

For these reasons, the Court concludes that Dr. Motley's testimony is inadmissible.

**B.     Dr. Benson**

Riddell contends that the Court should exclude Dr. Benson's testimony in its entirety, including his testimony and reports about both specific and general causation, under *Daubert*'s reliability prong. In response, the plaintiffs emphasize that this issue is better addressed during cross-examination at trial and that *Daubert* does not require scientific certainty from an expert. The Court concludes that Riddell has the better of the argument on Dr. Benson's opinion regarding specific causation and thus need not address his opinion on general causation.

During his deposition, Dr. Benson admitted he did not review the plaintiffs' individual medical records, let alone conduct any case-specific analysis on these

7

records. This admission likely explains why his causation report for each plaintiff contains the same conclusory statement regarding specific causation: "playing tackle football caused mTBI and other brain injuries and symptoms cited by Plaintiff in this case." *See, e.g.*, Expert Rep. of Dr. Randall Benson, M.D., as to Pl. Simson Green at 12 (dkt. no. 459-2). Following the briefing of these motions, the plaintiffs filed an affidavit from Dr. Benson in which he maintained that he had "reviewed each Plaintiff's fact sheet. . . and it is [his] opinion that these Plaintiffs each have individualized specific symptoms consistent with repeated blows to the head playing football." Aff. of Dr. Randall Benson, M.D. at 3 (dkt. no. 421-2). Even if the Court were to accept this affidavit, however, it would not salvage Dr. Benson's testimony.

Taking his report and affidavit together, Dr. Benson has not connected his generic specific causation medical conclusions—quoted above—with his testimony that the types of injuries suffered by the plaintiffs have multiple possible causes. For example, during his deposition, Dr. Benson agreed with the statement that his "reports contain no methodology for determining whether an individual's depression comes from participation in contact sports as opposed to one of the other causes of depression." Dep. of Dr. Randall Benson at 121 (dkt. no. 418-1). Dr. Benson thus has not differentiated between the plaintiffs' injuries being "consistent with" playing football and being *caused by* the use of Riddell's helmets while playing football. Accordingly, based on the record before the Court, there is nothing to show that Dr. Benson's specific causation opinion is anything other than "unsupported speculation" given the myriad alternative causes of the plaintiffs' brain and neurocognitive injuries. *Cummins*, 93 F.3d at 368. Without more, Dr. Benson's conclusions do not amount to "the fruit of a rigorous, objectively-verifiable approach" that *Daubert* requires. *Timm*, 932 F.3d at 994.

For these reasons, the Court concludes that Dr. Benson's specific causation testimony is inadmissible.

**C.     Summary judgment**

To obtain summary judgment, Riddell must demonstrate that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019). Moreover, it is "entirely proper" for a court to decide a motion for summary judgment at the same time as the admissibility of expert testimony. *Lewis v. CITGO Petrol. Corp.*, 561 F.3d 698, 704 (7th Cir. 2009).

To succeed on a failure to warn claim, both Texas and Iowa law require a plaintiff to prove the warning was inadequate, as well as general and specific causation. *See Ramsey v. Caterpillar Inc.*, No. 12 16 00155, 2017 WL 1426793, at *2 (Tex. App. Apr. 19, 2017); *Mercer v. Pittway Corp.*, 616 N.W.2d 602, 623–24 (Iowa 2000); *see also* Order on Mot. to Dismiss at 6 (dkt. no. 182). The plaintiffs have identified Dr. Motley as their sole expert for the adequacy element and Dr. Benson as the sole expert for both general and specific causation.

As Riddell contends, the plaintiffs cannot meet their burden of proof on their failure to warn claim if the referenced testimony of either of these experts is excluded. Having determined that both experts should be excluded, the Court concludes that Riddell is entitled to summary judgment on the claims of the bellwether plaintiffs.

**D.     Defendants' "omnibus" motion for summary judgment**

Defendants have separately filed what they call an "omnibus" motion for

9

summary judgment, citing various other claimed deficiencies in the plaintiffs' evidence and contentions. Given the Court's rulings on the *Daubert* and case-specific summary judgment motions just discussed, the Court need not address the omnibus motion as it relates to the bellwether plaintiffs.

The motion goes further, however. Riddell argues that given the various deficiencies it has cited, the Court should grant summary judgment regarding *all* of the plaintiffs, bellwether or otherwise. It says, essentially, that the litigation has gone on long enough and the Court should put an end to it. The Court understands Riddell's frustration with the fact that despite having proceeded this long, plaintiffs' counsel came nowhere close to producing the expert testimony needed to support the bellwether plaintiffs' claims. Given the way the litigation has been structured, however, Riddell cannot appropriately leverage this into a dismissal of the claims of non-bellwether plaintiffs that were expressly put on hold pending litigation of the claims of the bellwether plaintiffs. To do otherwise would amount to a serious violation of due process—dismissing the claims of dozens of plaintiffs without giving them an opportunity to be heard. The Court therefore denies Riddell's "omnibus" motion.

The Court agrees, however, that given the complete failure of plaintiffs' counsel to come up with admissible expert testimony to support the handful of plaintiffs on whose claims the parties have focused, it is now time to accelerate the remainder of this litigation. The parties are directed to immediately confer and offer a proposal, or competing proposals if they cannot agree, for doing exactly that. A joint status report containing such a proposal is to be filed by 4:00 p.m. Central time on January 13, 2022 so that it can be discussed at the January 14 telephonic status hearing. It should cover all cases but, as per the usual practice, should be filed under Case No. 17 C 8972.

**Conclusion**

The Court grants defendants' motions to exclude [Case No. 17 C 8972, dkt. nos. 423, 425] and their motions for summary judgment on the claims of the seven bellwether plaintiffs [dkt. nos. 430, 433, 436, 439, 442, 445, 448]. The Court directs the Clerk to enter judgment in favor of the defendants and against the following plaintiffs: Simson Green [Case No. 17 C 8544], Jaquaries Johnson [Case No. 18 C 129], Gregory Page [Case No. 18 C 129], Michael Sterns [Case No. 17 C 8544], Ashton Whitby [Case No. 17 C 8972], Walker Whitehorn [Case No. 18 C 129], and Jeffrey Wodka [Case No. 17 C 8544]. The Court denies defendants' omnibus motion for summary judgment [dkt. no. 427]. Defendants' motion for sanctions is moot to the extent it seeks dismissal of the bellwether cases, is denied to the extent it seeks dismissal of non-bellwether cases for the same reasons as discussed in Section D of this opinion, and taken under advisement to the extent it seeks monetary sanctions [dkt. no. 417]. The cases remain set for a telephonic status hearing on January 14, 2022.

Date: January 10, 2022

                                                    _____
                                                      MATTHEW F. KENNELLY
                                                      United States District Judge